Darla Jean **SOEDER**, Plaintiff,

v.

**GENERAL DYNAMICS CORPORATION, a Delaware Corporation, Defendant.**

**No. Civ. LV 80–133 RDF.**

United States District Court,
D. Nevada.

Dec. 8, 1980.

---

**254**

Gary Logan, Las Vegas, Nev., for plaintiff.

Vargas & Bartlett by Frederic R. Starich, Reno, Nev., for defendant.

## ORDER

PHILIP M. PRO, United States Magistrate.

On September 9, 1980, Plaintiff filed a Motion to Compel Production of certain written materials prepared by Defendant as a result of Defendant's investigation of the crash of F–111A aircraft, S/N 67–105 on July 5, 1979.

On November 7, 1980, a hearing was conducted on Plaintiff's Motion to Compel Production at which time it was established that three separate reports have been prepared concerning the above-referenced aircraft accident. One report, referred to as "Air Force Mishap Report", is a public document and already in the possession of Plaintiff. A second report, prepared by Defendant and delivered to the United States Air Force, was not produced by Defendant on the ground that should Plaintiff desire that particular report, the Air Force would intervene and assert an executive privilege to its contents. At the hearing, counsel for Plaintiff indicated that at this time he did not seek production of the second report now in the possession of the Air Force.

The third report, which is the subject of Plaintiff's Motion, is a General Dynamics' "In-House" Accident Report, dated August 31, 1979. Defendant objects to the production of the "in-house" report on the ground that it is work product protected from discovery under Federal Rules of Civil Procedure 26(b)(3) & (b)(4). Therefore, claims Defendant, absent a showing by Plaintiff of substantial need and a showing that Plaintiff cannot obtain the substantial equivalent of the material by other means, Defendant's "in-house" report should not be produced. Further, according to Defendant, even if the court sees fit to compel production of Defendant's "in-house" report, those portions of the report containing conclusions, opinions, or legal theories should be deleted in accordance with Rule 26(b)(3).

Plaintiff insists that Defendant's "in-house" report is not work product at all, but is in fact prepared in the ordinary course of business and that this procedure is followed by Defendant in the case of every F–111 aircraft accident. Plaintiff also argues that even if Defendant's report could be deemed to be work product, Plaintiff cannot obtain the substantial equivalent of the contents of the report without undue hardship as the accident occurred on the Nellis Air Force Range which is not accessible to Plaintiff and that the Air Force Mishap Report made public is often inconsistent factually with the type of "in-house" report prepared by Defendant.

■ The distinction between whether Defendant's "in-house" report is work product or prepared in the ordinary course of business is an important one. If the report is prepared by Defendant in the ordinary course of business, it is clearly discoverable by Plaintiff under Rule 26(b)(1). If, however, Defendant's "in-house" report is prepared in anticipation of litigation or for trial under Rule 26(b)(3), it is only discoverable by Plaintiff upon a showing of substantial need and inability to obtain the report's equivalent by other means. *Home Insurance Company v. Ballenger Corporation,* 74 F.R.D. 93, 101 (N.D.Ga., 1977). See also 8 Wright & Miller, *Federal Practice and Procedure* : Civil § 2024 (1970).

From the Court's review of Defendant's "in-house" report, it appears that the report was prepared shortly after the aircraft accident, and consists essentially of detailed, expert findings regarding the crash. Plaintiff claims, and Defendant concedes, that such reports are prepared routinely after every F–111 crash. Defendant claims such reports are prepared in anticipation of litigation, as well as because of a desire by Defendant to constantly improve its product, thereby saving lives and guarding against adverse publicity and the detrimental economic consequences which may flow from repeated crashes of their aircraft.

■ The fact that Defendant anticipates the contingency of litigation following a crash of one of its aircraft does not automatically qualify Defendant's "in-house" report as work product. Certainly litigation is a contingency to be recognized by any aircraft accident. However, given the equally reasonable desire of Defendant to improve its aircraft products, to protect future pilots and passengers of its aircraft, to guard against adverse publicity in connection with such aircraft crashes, and to promote its own economic interests by improving its prospect for future contracts for the production of said aircraft, it can hardly be said that Defendant's "in-house" report is not prepared in the ordinary course of business. *Miles v. Bell Helicopter Company,* 385 F.Supp. 1029, 1032, 1033 (N.D.Ga., 1974); and *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367, 373 (N.D. Ill., 1972).

Therefore, this Court concludes that Defendant's "in-house" report was prepared in the ordinary course of business, and IT IS ORDERED that said report be produced by Defendants to Plaintiff within 10 days of the date of the Order.